IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ROGERS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No: 1:14-cv-01136-STA-cgc |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Michael Rogers filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on June 4, 2010. On October 19, 2010, the ALJ denied the claim. The Appeals Council subsequently denied his request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on August 6, 1965, and was forty three years old at the time of the filing of his application for benefits. He alleges disability from degenerative disc disease beginning July 19, 2002. He has a GED and past work experience as a baler operator and hotel steward.

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through December 31, 2007; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the severe impairment of degenerative disc disease; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform sedentary work except that he is unable to operate any foot controls, kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to

---

[8] R. 15 – 19.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, a substantial number of jobs exist in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's decision. He specifically argues that the ALJ erred in finding that he retains the residual functional capacity to perform work other than his past relevant work. Plaintiff's arguments are not persuasive.

---

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

In the present case, the only medical assessment of Plaintiff's ability to perform work activities is the report submitted by orthopedic consulting examiner Alan Morris, M. D., who concluded that Plaintiff was limited to sitting four out of eight hours, standing two out of eight hours, and walking one out of eight hours. Dr. Morris found that Plaintiff's medical condition required that he lie down one out of eight hours, sit thirty minutes at one time, stand fifteen minutes at one time, and walk thirty minutes at one time, and never stoop.[14]

The ALJ found that the record did not support limitations in stooping, nor did it support a finding that Plaintiff would have to lie down for one hour in an eight-hour workday, and, therefore, he did not include those limitations in the residual functional capacity findings. The ALJ reasoned that those particular limitations were based on allegations Plaintiff made to Dr. Morris regarding his subjective pain, and there was no objective evidence in the record to support those limitations.[15] The ALJ could properly decline to accept limitations based on Plaintiff's subjective claims of symptoms, which the ALJ has found are not wholly credible, as "[t]he ALJ is not required to simply accept the [opinion] of a medical examiner based solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence."[16]

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a

---

[14] R. 210-215.

[15] R. 206.

[16] *Griffith v. Comm'r of Soc. Sec.*, 2014 WL 3882671 at * 8 (6th Cir. Aug. 7, 2014) (citing 20 C.F.R. § 416.927(b)); *see also Bell v. Barnhart*, 148 F. App'x. 277, 285 (6th Cir. Aug. 7, 2014) (declining to give weight to a doctor's opinion that was only supported by the claimant's reported symptoms).

claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[17] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[18]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[19] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[20]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[21] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source

---

[17] 20 C.F.R. § 404.1527(c)(2).

[18] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *3 (July 2, 1996).

[19] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[20] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *5 (July 2, 1996).

[21] 20 C.F.R. § 404.1502, 404.1527(c)(1).

who has examined the claimant but does not have an ongoing treatment relationship.[22] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[23] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[24] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[25]

In the present case, Plaintiff has not pointed to any reports or opinions from a treating physician suggesting that he has limitations greater than those imposed by the ALJ. Therefore, the Court must determine whether the ALJ adequately weighed the opinion of Dr. Morris. The Court finds that the evidence of record as a whole, including the minimal and conservative treatment records coupled with Plaintiff's diminished credibility, did not support all of the limitations opined by Dr. Morris, and the ALJ properly declined to include them.

Substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's physical residual functional capacity. The ALJ

---

[22] *Id.* § 404.1502, 404.1527(c)(2).

[23] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180 at *2.

[24] 20 C.F.R. § 404.1527(c).

[25] *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. 96-6p, 1996 WL 374180, 61 Fed. Reg. 34,466-01 (July 2, 1996).

7

properly determined that Plaintiff could perform a reduced range of sedentary work, and Plaintiff has failed to show that he is otherwise more limited.

A claimant's credibility comes into question when his "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence."[26] To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[27] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying,"[28] although the ALJ's credibility finding must find support in the record.

In assessing Plaintiff's credibility, the ALJ pointed out Plaintiff claimed that he suffered a work-related injury following heavy lifting on October 8, 1997, and subsequently experienced progressively worse back pain.[29] Imaging from 2002 confirmed a herniated lumbar disc with calcium formation, at which time, Plaintiff's provider recommended proceeding conservatively with epidural injections.[30] Plaintiff had one epidural injection but never returned for follow-up care, which suggests that his pain was not as severe as he claims it to be.[31] Plaintiff sought

---

[26] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[27] *Id.*

[28] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[29] R. 55, 186.

[30] R. 40-41, 178, 190-91, 197.

[31] R. 178.

treatment just a few times during his eight year alleged period of disability – during November and December 2002 and in June 2009, with no treatment during the more than six years in between, and no treatment subsequent to June 2009.[32] An ALJ may properly consider the treatment an individual has had and whether the treatment is indicative of disability.[33]

Not only did Plaintiff fail to seek treatment on a regular basis, when he did seek treatment, the objective findings were minimal, showing mild degenerative disc disease and normal tone and no spasm.[34] There is no evidence of a significant degree of muscle atrophy, persistent muscle spasm, significant sensory or motor loss, significant reflex abnormality, significant gait disturbance, or significantly reduced range of motion of the spine or joints. There is no indication that Plaintiff has been prescribed pain modalities such as a transcutaneous electrical nerve stimulation ("TENS") unit, back brace, or assistive device for ambulation, or that he has been referred to a pain management clinic. The sparse treatment and minimal findings are not consistent with Plaintiff's allegations of disability.

On the few occasions when Plaintiff did seek treatment, he failed to follow-up as recommended. An ALJ may use a claimant's non-compliance with treatment as a credibility factor.[35] And, as previously noted, no treating physician has placed restrictions on Plaintiff's

---

[32] R. 178-79, 187-88.

[33] *See Curler v. Comm'r of Soc. Sec.*, 2014 WL 1282521 *8, (6th Cir. April 1, 2014) ("Had Curler suffered from severe pain associated with her back condition, the medical records would have revealed severe back or leg abnormalities, abnormal functioning on physical exams, recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations; SSR 96-7p (" [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . .").

[34] R. 186-88.

[35] *See Ranellucci v. Astrue*, 2012 WL 4484922, *10 (M.D. Tenn., September 27, 2012) (citation omitted).

activities, and no treating provider has opined that Plaintiff cannot work. Plaintiff testified that his physician told him he needed surgery, which he did not want, but the record contains no recommendations for surgery.[36] In fact, Plaintiff's doctor recommended conservative treatment, not surgery. Inconsistencies detract from Plaintiff's credibility.

The Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the intensity and persistence of his alleged symptoms, and the record as a whole does not indicate that his condition was of disabling severity. Although Plaintiff presented objective medical evidence of an underlying medical condition, i.e., degenerative disc disease, and the ALJ found that his impairments could reasonably cause the kind of limitations alleged by Plaintiff, Plaintiff's statements about the intensity, persistence, and limiting effect of his alleged symptoms were not entirely credible because they were inconsistent with the evidence of record. The ALJ carefully considered the record as a whole, including Plaintiff's work history, treatment history, and evidence that he failed to give full effort during medical examinations. Accordingly, the ALJ's credibility determination is supported by substantial evidence.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[37] The Commissioner may carry this burden by applying the medical-vocational grids[38] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on

---

[36] R. 46.

[37] *Jones*, 336 F.3d at 474.

[38] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

whether the claimant has transferable work skills.[39] The grids take administrative notice of a significant number of unskilled jobs a claimant can perform given his residual functional capacity.[40] Here, the grids direct a finding of not disabled for a person of Plaintiff's age, education, work history, and residual functional capacity.[41] Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

    **IT IS SO ORDERED.**

                            **s/ S. Thomas Anderson**
                            S. THOMAS ANDERSON
                            CHIEF UNITED STATES DISTRICT JUDGE

                            Date:   June 6, 2017.

---

[39] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[40] *See* 20 C.F.R. part 404, subpart p, appendix 2, § 200.00(b); Social Security Ruling 85-15, 1985 WL.

[41] *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.21.